Case 1:23-cr-00255-HG   Document 1   Filed 06/13/23   Page 1 of 11 PageID #: 1

DJ/HDM:AJE
F. #2021R00827

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
\*   JUNE 13, 2023   \*
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

JIAN AI CHEN,
    also known as "Maggie,"

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. 23-CR-255
(T. 18, U.S.C., §§ 371, 982(a)(7), 982(b)(1), 1349 and 3551 et seq.; T. 21, U.S.C., § 853(p))

Judge William F. Kuntz, II
Magistrate Judge Marcia M. Henry

THE GRAND JURY CHARGES:

INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.    Background

    A.    The Medicare and Medicaid Programs

        1.    The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were at least 65 years old or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

        2.    Medicare was divided into multiple parts. Medicare Part D provided prescription drug coverage to persons who were eligible for Medicare. Medicare beneficiaries could obtain Part D benefits in two ways: (a) by joining a prescription drug plan, which covered only prescription drugs, or (b) by joining a Medicare Advantage Plan (also known as Medicare Part C), which covered both prescription drugs and medical services (collectively, "Part D

Plans"). These Part D Plans were operated by private companies, often referred to as drug plan "sponsors," that were approved by Medicare.

3. Medicare Advantage Plans offered beneficiaries the opportunity to secure coverage from private insurers ("Contractors") for many of the same services that were provided by Medicare, in addition to certain mandatory and optional supplemental benefits.

4. The New York State Medicaid program ("Medicaid") was a federal and state health care program providing benefits to individuals and families who met specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care. CMS was responsible for overseeing Medicaid in participating states, including New York. Individuals who received benefits under Medicaid were similarly referred to as Medicaid "recipients."

5. In New York State, Medicaid provided coverage to its recipients for prescription drugs. Medicaid recipients could obtain their prescription drug benefits from pharmacies either through "fee-for-service" enrollment or through "Medicaid Managed Care Plans," which were administered by private insurance companies that were paid by Medicaid.

6. As part of their insurance benefits, some Medicare beneficiaries and Medicaid recipients enrolled in certain Medicare Advantage and Medicaid Managed Care plans received a certain amount of credit per month that could be spent on eligible over-the-counter ("OTC") non-prescription items such as analgesics, diabetes supplies, antihistamines, weight management supplies, sleep aids, vitamins, toothpaste, durable medical equipment and other items. The monthly OTC credit was pre-loaded onto debit cards known as "over-the-counter cards" or "OTC Cards," which were issued to beneficiaries and recipients by the plan sponsors. Any funds that were not used by the end of the month were forfeited, and the OTC Cards were

reloaded each month with refreshed funds. Pharmacies generally dispensed OTC benefits to beneficiaries and recipients by swiping the OTC Cards, like debit cards, through an electronic payment system, in exchange for the eligible OTC items being purchased by the beneficiaries and recipients.

7.  Medicare, Part D Plans, Medicare Advantage Plans, Medicaid and Medicaid Managed Care Plans (collectively, the "Health Plans") each qualified as a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

8.  Pharmacies were permitted to submit claims for reimbursement to the Health Plans only for medications that were actually dispensed and that were not the product of kickbacks and bribes, among other requirements.

B.  The Defendant and Relevant Entities

9.  The defendant JIAN AI CHEN, also known as "Maggie," resided in Syosset, New York and Brooklyn, New York.

10. Clinic 1, an entity the identity of which is known to the Grand Jury, was a medical practice located in Brooklyn, New York. The defendant JIAN AI CHEN was employed as a medical assistant at Clinic 1.

11. AC Pharmacy Corp. ("AC Pharmacy") and A Star Pharmacy Inc. ("A Star Pharmacy") (together, the "Scheme Pharmacies") were pharmacies located in Brooklyn, New York near Clinic 1. AC Pharmacy was registered as a pharmacy establishment with the State of New York since approximately September 2008, and A Star Pharmacy was so registered since approximately March 2016. The defendant JIAN AI CHEN was an owner of the Scheme Pharmacies.

12. Individual 1, an individual whose identity is known to the Grand Jury, was listed as an owner and officer of the Scheme Pharmacies in registration materials filed with the New York State Department of Education, Board of Pharmacy, but Individual 1 was not involved in or responsible for the operations or decision-making of the Scheme Pharmacies, and Individual 1 did not work at the Scheme Pharmacies. Individual 1 was the defendant JIAN AI CHEN's former spouse.

13. John Yiu was a physician who worked at Clinic 1 in or about and between at least 2019 and 2021.

14. Company 1, an entity the identity of which is known to the Grand Jury, was a supermarket located near the Scheme Pharmacies in Brooklyn, New York.

15. Company 2, an entity the identity of which is known to the Grand Jury, was a company owned by a relative of John Yiu.

II. The Health Care Fraud and Kickback Scheme

16. In or about and between January 2010 and January 2021, the defendant JIAN AI CHEN, together with others, agreed to execute and executed a fraudulent scheme at the Scheme Pharmacies whereby claims were submitted to the Health Plans that were procured by the payment of bribes and kickbacks and for drugs that were not actually dispensed to beneficiaries and recipients.

17. In particular, the defendant JIAN AI CHEN, together with others, agreed to pay and caused to be paid kickbacks and bribes: (a) to customers in exchange for the ability to bill their insurance for pharmaceutical products; (b) to John Yiu in exchange for the referral of beneficiaries to the Scheme Pharmacies; and (c) to Individual 1, including in the form of purported wages and salary for Individual 1, in exchange for CHEN's referral of patients from Clinic 1 to the Scheme Pharmacies. CHEN, together with others, further agreed to submit and

caused to be submitted false and fraudulent claims through the Scheme Pharmacies to the Health Plans for dispensing prescription drugs that were: (a) not eligible for payment by Medicare and Medicaid because, inter alia, they were dispensed in connection with the payment of kickbacks and bribes; and (b) never dispensed to customers.

18. In order to generate business and retain customers for the Scheme Pharmacies, the defendant JIAN AI CHEN, together with others, agreed to offer and pay kickbacks and bribes to Medicare beneficiaries and Medicaid recipients in exchange for the ability to bill those individuals' insurance plans for dispensing prescription drugs. These kickbacks and bribes included, among other things, cash and so-called "coupons," which were gift certificates and gift cards to local supermarkets.

19. The defendant JIAN AI CHEN, together with others, agreed that the employees of the Scheme Pharmacies would supply gift certificates and gift cards to beneficiaries and recipients to induce them to fill their prescriptions at the Scheme Pharmacies. In furtherance of the scheme, employees of the Scheme Pharmacies frequently purchased gift certificates and gift cards by writing checks drawn on the Scheme Pharmacies' bank accounts and made payable to local supermarkets, including Company 1. Employees of the Scheme Pharmacies also provided cash kickbacks and bribes to beneficiaries and recipients in exchange for swiping a customer's OTC Card, even though no actual OTC item or product was provided to the customer.

20. In addition, the defendant JIAN AI CHEN, together with others, agreed to pay John Yiu illegal kickbacks and bribes to induce Yiu to refer beneficiaries and recipients to the Scheme Pharmacies. In particular, payments were made from the Scheme Pharmacies' bank

accounts to other accounts for the benefit of John Yiu, including by making payments to Company 2, among others.

21. Between approximately January 2012 and January 2021, the Scheme Pharmacies paid approximately $5 million for gift certificates to supermarkets located near the Scheme Pharmacies, which the defendant JIAN AI CHEN, together with others, used to pay illegal kickbacks and bribes to beneficiaries and recipients.

22. The defendant JIAN AI CHEN, together with others, submitted and caused the submission of false and fraudulent claims on behalf of the Scheme Pharmacies to the Health Plans that were procured by the payment of bribes and kickbacks and for drugs that were not actually dispensed to beneficiaries and recipients. Between approximately January 2010 and January 2021, AC Pharmacy received approximately $75 million in reimbursement for claims from the Health Plans.

23. Between approximately September 2016 and January 2021, A Star Pharmacy received approximately $26 million in reimbursement for claims from the Health Plans.

COUNT ONE
(Conspiracy to Commit Health Care Fraud)

24. The allegations contained in paragraphs one through 23 are realleged and incorporated as if fully set forth in this paragraph.

25. In or about and between January 2010 and January 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JIAN AI CHEN, also known as "Maggie," together with others, did knowingly and willfully conspire to execute a scheme and artifice to defraud the Health Plans, which are health care benefit programs, as that term is defined under Title 18, United States Code, Section 24(b), and

6

to obtain, by means of one or more materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, the Health Plans, in connection with the delivery of and payment for health care benefits, items and services, contrary to Title 18, United States Code, Section 1347.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT TWO
(Conspiracy to Offer and Pay Health Care Kickbacks)

26. The allegations contained in paragraphs one through 23 are realleged and incorporated as if fully set forth in this paragraph.

27. In or about and between January 2010 and January 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JIAN AI CHEN, also known as "Maggie," together with others, did knowingly and willfully conspire to offer and pay kickbacks, directly and indirectly, overtly and covertly, in cash and in kind:

    (a) to persons to induce such persons to refer Medicare beneficiaries and Medicaid recipients to the Scheme Pharmacies for the furnishing and arranging for the furnishing of services and items for which payment may have been made in whole and in part under a federal health care program, that is, the Health Plans, contrary to Title 42, United States Code, Section 1320a-7b(b)(2)(A); and

    (b) to persons to induce such persons to purchase, lease, order and to arrange for and recommend purchasing, leasing and ordering services and items for which payment may have been made, in whole and in part, under a federal health care program, that is, the Health Plans, contrary to Title 42, United States Code, Section 1320a-7b(b)(2)(B).

7

28.   In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendant JIAN AI CHEN, also known as "Maggie," together with others, did commit and cause the commission of, among others, the following:

## OVERT ACTS

(a)   On or about December 30, 2011, a check was written from a bank account held in the name of AC Pharmacy and made payable to Company 1 in the amount of $2,500.

(b)   On or about December 7, 2018, a check was written from a bank account held in the name of A Star Pharmacy and made payable to Company 1 in the amount of $5,000 bearing the memo note "coupon."

(c)   On or about August 1, 2020, a check was written from a bank account held in the name of AC Pharmacy and made payable to Company 1 in the amount of $8,000 bearing the memo note "coupon."

(d)   On or about August 2, 2020, a check was written from a bank account held in the name of AC Pharmacy and made payable to Company 1 in the amount of $6,000 bearing the memo note "coupon."

(e)   On or about August 6, 2020, a check was written on a bank account held in the name of A Star Pharmacy and made payable to Company 1 in the amount of $9,000 bearing the memo note "coupon."

(f) On or about September 18, 2020, a check was written from a bank account held in the name of AC Pharmacy and made payable to Company 2 in the amount of $30,728.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION

29. The United States hereby gives notice to the defendant that, upon her conviction of either of the offenses charged herein, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(7), which requires any person convicted of a federal health care offense to forfeit property, real or personal, that constitutes, or is derived directly or indirectly from, gross proceeds traceable to the commission of such offense.

30. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(7) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

*Mary Beth Glickman*
FOREPERSON

*By Carolyn Pokorny, Assistant U.S. Attorney*

BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

*Glenn S. Leon / by AJE*
GLENN S. LEON
CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

F.#: 2021R00827
FORM DBD-34
JUN. 85

No. _____

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

JIAN AI CHEN,

Defendant.

## INDICTMENT

(T. 18, U.S.C. §§ 371, 982(a)(7), 982(b)(1), 1349 and 3551 et seq.; T. 21, U.S.C. § 853(p)))

*A true bill.*

*Mary Beth Gleckman*
_____
*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____
*Clerk*

Bail, $ _____

Andrew Estes, *Trial Attorney* (718) 254-6250